859 F.2d 1171
 27 Fed. R. Evid. Serv. 436
 UNITED STATES of America
v.
George W. ANDERSON a/k/a "Asmar".
Appeal of George ANDERSON, in No. 87-1595.
UNITED STATES of America
v.
Howard L. DENNIS a/k/a "Ches".
Appeal of Howard DENNIS, in No. 87-1607.
UNITED STATES of America
v.
Edward TAYLOR a/k/a "Fast Eddie".
Appeal of Edward TAYLOR, in No. 87-1682.
 Nos. 87-1595, 87-1607 and 87-1682.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
Sept. 30, 1988.
 Decided Oct. 21, 1988.
Rehearing Denied in No. 87-1682 Jan. 5, 1989.
 
 Robert F. Simone, Philadelphia, Pa., Milton E. Grusmark, Milton E. Grusmark, P.A., North Miami, Fla., for appellant, George Anderson.
 William T. Cannon, Philadelphia, Pa., for appellant, Howard L. Dennis.
 John G. McDougall, Philadelphia, Pa., for appellant, Edward Taylor.
 Ewald Zittlau, Asst. U.S. Atty., Philadelphia, Pa., for appellee.
 Before GIBBONS, Chief Judge, SEITZ, Circuit Judge, and FARNAN, District Judge.*
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Appellants, George Anderson ("Anderson"), Howard Dennis ("Dennis") and Edward Taylor ("Taylor"), appeal from their convictions and subsequent sentencing pursuant to a seven count superseding indictment charging Appellants with conspiracy to possess with intent to distribute heroin and cocaine and with other related charges. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 2
 * On January 13, 1985, New Jersey State Trooper Karl Douglas stopped a 1981 Cadillac, travelling northbound on the New Jersey turnpike, after noticing that the vehicle's temporary registration was discolored. After stopping the car and noting that the temporary registration had in fact expired, Douglas asked the driver of the vehicle, George Anderson, for his driver's license. Douglas observed that the car had two passengers later identified as Appellants Dennis and Taylor. At this point, Douglas noticed a black plastic garbage bag on the center console of the car.
 
 
 3
 Douglas withdrew to his police car and returned to the Cadillac with a "Consent Form" in order to obtain authorization from Anderson to conduct a search of the vehicle. Douglas believed that a search was necessary because his training and experience had taught him that controlled substances are often transported in garbage bags. Anderson was informed that he had the right to refuse to allow the vehicle to be searched and could stop the search at any time. Anderson did not elect to exercise his rights and instead signed the consent form which had been read and presented to him.
 
 
 4
 Douglas searched the black garbage bag and found $10,400 therein. Anderson told Douglas that he won the money in Atlantic City and was headed for Chester, Pennsylvania. Douglas then requested the Appellants to leave the vehicle. The Officer patted down each Appellant and removed a large bulge from Taylor's pocket which turned out to be money. Douglas searched the remainder of the car including the trunk and discovered two other bags containing large sums of money. One bag found under the front passenger seat was claimed by Appellant Dennis. The other bag was found in the trunk and was claimed by Appellant Taylor after Douglas asked to whom it belonged.
 
 
 5
 The Cadillac was then impounded because of the expired registration and the three men were taken to the police station for questioning. No arrests were made following this sequence of events but Officer Douglas's testimony was presented at the trial of the Appellants.
 
 
 6
 In March 1985, Miles Edwards, a Philadelphia Police Officer assigned to the Drug Enforcement Administration Task Force, was detached to the William Penn Housing Project in Chester, Pennsylvania. Edwards's mission was to become familiar with, and make undercover drug purchases from the drug dealers known to be operating in the William Penn Project. Emerson Baynard, an undercover informant, was employed to assist Edwards in accomplishing his task.
 
 
 7
 Edwards's investigation began on March 6, 1985 and continued through June 23, 1986. During this time period Edwards, with the assistance of Baynard, had occasion to purchase controlled substances, including heroin, from 26 individuals. Among those individuals from whom Edwards purchased heroin were the following: Walter Dennis, Shawn Presbery, William Colder, George Jones, Anderson and Dennis.
 
 
 8
 On February 19, 1987, a seven count superseding indictment was returned by a federal grand jury against four individuals including Appellants. Anderson was charged with operating a continuing criminal enterprise, conspiracy to possess with intent to distribute heroin and cocaine and three counts of distribution of heroin. Dennis was charged with conspiracy to possess with intent to distribute heroin and cocaine and with distribution of heroin. Taylor was charged with conspiracy to possess with intent to distribute heroin and cocaine and with intent to distribute cocaine.
 
 
 9
 On May 20, 1987, the jury returned a verdict of guilty on all of the counts charged with the exception of Taylor's intent to distribute cocaine charge.[1] On September 22, 1987, Anderson and Dennis were sentenced. Anderson received a 25 year sentence and a fine of $100,000 on the continuing criminal enterprise charge and concurrent 20 year terms on the remaining counts. Dennis was sentenced to 15 years imprisonment. On October 22, 1987, Taylor was sentenced to five years imprisonment. All Appellants are currently in custody and serving their sentences.
 
 II
 
 10
 Appellant Anderson claims that there was insufficient evidence present to support his conviction on the continuing criminal enterprise count. 21 U.S.C. Sec. 848.[2] More specifically, Anderson claims that there was not enough evidence to support the government's contention that Anderson acted in concert with five or more persons with respect to whom Anderson occupied a position of organizer, supervisor, or any other management position. 21 U.S.C. Sec. 848(d)(2)(A). Anderson's continuing criminal enterprise conviction must be "sustained if there is substantial evidence, taking the view most favorable to the government, to support it." United States v. Aguilar, 843 F.2d 155, 157 (3d Cir.1988).
 
 
 11
 Walter Dennis testified that he sold cocaine and heroin for Anderson on consignment and that his brother, Appellant Dennis, also worked for Anderson. Shawn Presbery testified that he sold drugs which were given to him by Appellant Dennis under the direction of Anderson. Moreover, testimony was adduced that both Taylor and George Jones operated under the direction of Anderson. The evidence adduced at trial, when viewed in the light most favorable to the government, supports the notion that Anderson "acted in concert with five or more persons" over whom he held a supervisory position. See Jeffers v. United States, 432 U.S. 137, 147-48, 97 S.Ct. 2207, 2214-15, 53 L.Ed.2d168 (1977); United States v. Aguilar, 843 F.2d at 157.
 
 III
 
 12
 Appellant Anderson claims that the district judge's failure to explain the elements of the continuing criminal enterprise statute requires reversal of his conviction. As Anderson admits, no objection was made at trial. This court must therefore examine the jury instructions under the plain error standard. United States v. Castro, 776 F.2d 1118, 1128 (3d Cir.1985) cert. denied 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). Under this standard this court must determine whether the jury instructions resulted in a "miscarriage of justice." United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).
 
 
 13
 In general, the language of the continuing criminal enterprise statute is "within the common understanding of a juror" and is not "so technical or ambiguous as to require a specific definition." United States v. Johnson, 575 F.2d 1347, 1357-58 (5th Cir.1978) cert. denied 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979). This is not to say, however, that a district judge may omit those essential elements of the continuing criminal enterprise statute which, although not appearing on the face of the statute, have been judicially recognized. United States v. Echeverri, 854 F.2d 638, 643 (3d Cir.1988).
 
 
 14
 In this case the district judge charged the jury as to the five essential elements which can be gleaned from the face of the statute[3] and aptly informed the jury that each of these elements must be found beyond a reasonable doubt. The district judge did not inform the jury that to find a continuing "series of violations" the jury must find three violations of the federal drug laws and must unanimously agree as to which incidents it is looking when finding these three violations. The failure to so charge amounted to error. United States v. Echeverri, at 643. The question that must be addressed is whether this error amounted to plain error requiring reversal of Anderson's conviction.
 
 
 15
 Failure to charge the jury as to the essential elements of a crime has been held in this circuit to amount to plain error. United States v. Small, 472 F.2d 818, 820 (3d Cir.1972). The Supreme Court, however, has rejected any per se approach to plain error and instead has required a case by case determination. United States v. Young, 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985). To find plain error, the claimed error must not only affect substantial rights but must have an unfair or prejudicial impact on jury deliberations such that affirmance will result in manifest injustice. Id. This requires us to examine the entire record including the evidence of Appellant's guilt. United States v. Jackson, 569 F.2d 1003 (7th Cir.) cert. denied 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978).
 
 
 16
 In this case, manifest injustice did not result from the district court's improper charge. The jury unanimously found Anderson guilty of three counts of distribution of heroin and one count of conspiracy to possess with intent to distribute heroin and cocaine in addition to the continuing criminal enterprise count. In such a circumstance it is impossible to conclude that the jury may not have been in unanimous agreement that Anderson was guilty of three underlying drug crimes. Thus, it cannot be said that the district judge's error in any way prejudiced the jury's deliberations or resulted in manifest injustice. See United States v. Young, 470 U.S. at 19, 105 S.Ct. at 1048. Accordingly, the jury's finding of guilty on the continuing criminal enterprise count will stand.
 
 IV
 
 17
 Appellants Anderson and Taylor contend that the district court erred in denying their motion to suppress the evidence found as a result of Officer Douglas's vehicle search. Appellants claim that Officer Douglas exceeded the scope of Anderson's consent to search by opening closed bags in, and by searching the trunk of the vehicle. There is no question that the vehicle was properly stopped and that the consent to search the vehicle was voluntarily provided by Anderson. The consent form which Anderson signed authorized Douglas to "remove any letters documents, papers, materials or other property which is pertinent to the investigation ..."
 
 
 18
 Appellants' argument is without merit. In an almost identical fact situation, the Eleventh Circuit ruled that a consent form which authorized the police to remove "whatever documents or other items of property whatsoever, which they deem pertinent to the investigation," gave the police authority to open closed suitcases found inside the automobile. United States v. Kapperman, 764 F.2d 786, 794 (11th Cir.1985). The court reasoned that "documents or other items of property cannot be expected to be lying loose in an automobile." Id. Similarly, Officer Douglas, in searching the vehicle for evidence that the drug laws had been violated could not expect the contraband to be lying in plain view. As this circuit has said in the search warrant context: "Permission to search an automobile would be hollow indeed if it did not include permission to search its contents and component parts." United States v. Milhollan, 599 F.2d 518, 527 (3d Cir.) cert. denied 444 U.S. 909, 100 S.Ct. 221, 62 L.Ed.2d 144 (1979).
 
 
 19
 Appellant Taylor argues that Anderson's consent to search should not be found to apply to Taylor as Anderson did not have authority to consent to a search of a bag belonging to Taylor which was located in the trunk. This argument is without merit. A party can consent to the search of a third person's property where the consenting party possesses "common authority over or other sufficient relationship to the premises or affects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Neither Taylor nor Anderson owned the vehicle; thus, Anderson as the driver had at least common authority over the trunk of the car and could validly consent to the search thereof.
 
 
 20
 Taylor, however, argues that Anderson's consent should not be used to defeat his continued expectation of privacy. This argument is also flawed. A person cannot be said to retain a unique expectation of privacy in an area which is shared in common with others such as the trunk of the car. Moreover, it is uncontroverted that while the car was being searched, Taylor stood by and watched without objection. Such behavior is completely inconsistent with the contention that Taylor retained an expectation of privacy. It was therefore proper for the fruits of the search to be admitted against Taylor.
 
 
 21
 Appellant Taylor also argues that the fruits of Douglas's "pat down" search of Taylor, i.e. a large amount of cash, should have been suppressed because such a search was improper under the circumstances. Officer Douglas observed a bag on the front seat which he discovered contained a large amount of cash. He testified that having seen the money, he became suspicious that it might be drug money and became concerned for his safety because persons involved with drugs often carry weapons. Thereafter, he asked the Appellants to step out of the car and conducted a pat down search of each of them. Douglas felt a large bulge in Taylor's pocket and removed its source to determine if it was a weapon. This procedure is the very essence of the practice sanctioned by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellant's contention is therefore without merit.
 
 
 22
 Accordingly, the district court's refusal to suppress the fruits of Officer Douglas's search will be affirmed.
 
 V
 
 23
 Anderson claims that it was error for the district judge to refuse to suppress statements made by Anderson during the roadside stop. Anderson claims that Douglas's failure to provide Anderson with a Miranda warning mandates the exclusion of the incriminating statements.
 
 
 24
 It is uncontroverted that Douglas stopped the vehicle because he noted that the temporary registration appeared weathered and most probably expired. As the Supreme Court has acknowledged, "a traffic stop significantly curtails the freedom of the driver and the passengers, if any, of the detained vehicle." Berkemer v. United States, 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984). However, the principles of Miranda have been held not to apply to the traffic stop context. Id. at 439, 104 S.Ct. at 3149. Moreover, the roadside questioning of a motorist detained pursuant to a routine traffic stop is not custodial in nature and a Miranda warning is not required. Id. at 440, 104 S.Ct. at 3150.
 
 
 25
 There is no bright line rule for determining when an investigatory stop becomes custodial. United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1970). "In determining whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly ..." Id. at 686, 105 S.Ct. at 1575. In this case, the roadside detention of Anderson, Taylor and Dennis lasted between ten and fifteen minutes. During this time Officer Douglas searched the vehicle and its occupants for drugs and drug related contraband. Under these circumstances it was not error for the district court to refuse to suppress the roadside statements.[4]
 
 VI
 
 26
 Anderson claims that even if the motion to suppress was properly denied, the fruits of the vehicle stop should have been excluded because they were unfairly prejudicial. See Fed.R.Evid. 403. We must review the decision of the district court to determine if there was an abuse of discretion in admitting the evidence. See United States v. Long, 574 F.2d 761, 768 (3d Cir.) cert. denied 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978).
 
 
 27
 In this case, over $21,000 was found. The money was in small denominations and was wrapped in rubber bands and placed in three individual bags, one of which was a garbage bag. In such a circumstance, evidence of large amounts of cash is probative of "intent and state of mind to enter upon a narcotics scheme." United States v. Bernal, 719 F.2d 1475, 1478 (9th Cir.1983). Moreover, the statements regarding both the origin of the money and Anderson's destination provided fair grounds for the inference that Anderson was headed toward New York with the intention of consummating a drug transaction. Anderson told Officer Douglas that he had won the money, which was in small bills and wrapped in rubber bands, in Atlantic City. He also told Douglas that he was headed for Chester, Pennsylvania when in fact his car was not proceeding in that direction but was headed northbound toward New York.
 
 
 28
 Admittedly, the evidence obtained as a result of the vehicular stop prejudiced Anderson in the sense of making him appear guilty. However, given the probative value of the evidence, and the exceptional amount of deference to be accorded a district court judge in assessing the relative prejudice of evidence, the trial judge cannot be said to have acted beyond the scope of his discretion. See Construction Limited v. Brooks-Skinner Building Co., 488 F.2d 427, 431 (3d Cir.1973).
 
 VII
 
 29
 Appellants contend that the district court erred in refusing to allow them to call United States Probation Officer Edward Cosgrove as a witness. Appellants sought to introduce Cosgrove's testimony to prove that: (1) during the time period that Walter Dennis was on parole he sold drugs in spite of telling his probation officer that he had not; (2) that Walter Dennis told his probation officer that he had dedicated himself to God when in fact he was selling drugs; (3) that Walter Dennis told his probation officer that he was a member of a union when he was not; and (4) that Walter Dennis lied about the reason for his discharge from the marines. This testimony was sought in order to attack the credibility of Walter Dennis and to show that Walter Dennis was biased and had a motive to lie. So far as motive is concerned, Cosgrove's testimony was to show that Walter Dennis wanted to get Anderson off the street so that he could become the drug kingpin.
 
 
 30
 To the extent that Cosgrove's testimony was an attempt to attack Walter Dennis's credibility by extrinsic evidence, it is strictly prohibited by Federal Rule of Evidence 608(b). Furthermore, although evidence of motive may be shown by extrinsic evidence, it is difficult to fathom from the proffered testimony how motive could possibly have been shown. As the district court judge aptly noted: "Here counsel contends that repetitive collateral evidence should have been permitted so that he could argue the possibilities of rivalry and if there was a rivalry, the possibilities of motivation, and if there was a motivation, the possibilities of untruthful testimony. Resourceful as this argument may be, it is too speculative, too remote, too attenuated." We agree with the district judge's assessment and conclude that Cosgrove's testimony was properly excluded.
 
 VIII
 
 31
 For all the foregoing reasons, the judgment of sentence against all Appellants will be affirmed.
 
 
 
 *
 Honorable Joseph J. Farnan, Jr., United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 The count charging Taylor with possession with intent to distribute cocaine was dismissed on April 15, 1987 upon motion of the government
 
 
 [2]
 21 U.S.C. Sec. 848(d) provides: "For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if--(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and (2) such violation is part of a continuing series of violations of this subchapter or subchapter II of this chapter--(A) which are undertaken by this person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and (B) from which such person obtains substantial income or resources."
 
 
 [3]
 The district court judge charged as follows: "Count 7 charges George W. Anderson with engaging in a continuing criminal enterprise. One of the laws of the United States is known as the Controlled Substances Act. In general terms, it prohibits the distribution of certain drugs, including heroin and cocaine. One of the provisions of this act makes it a separate crime for a person to commit a series of violations of the act in concert with five or more persons and that with respect to them he occupies a position of organizer, a supervisory position or any other position of management, and that he derives substantial resources from these activities. Well, that's the charge against George W. Anderson in Count 7
 In order to establish his guilt as to this charge, there are five essential elements which the government must have proven beyond a reasonable doubt. First, that Anderson violated the Controlled Substances Act, for example that he distributed cocaine, that he distributed heroin, that he conspired to distribute either or both or that he aided and abetted in the distribution of heroin or cocaine;
 Second, that these violations were part of a continuing series of violations which George W. Anderson committed;
 Third, that he undertook these offenses in concert with five or more other person, persons who are either named or unnamed in the indictment;
 Fourth, that he occupied a position of organizer or a supervisory position or any other position of management with respect to these other five persons;
 And fifth, that he obtained substantial income or resources from the continuing series of violations as opposed to obtaining this income or resource from legal activities. Each of these things or these five elements must be proven beyond a reasonable doubt."
 
 
 [4]
 Appellant's citation to United States v. Wilson, 666 F.2d 1241 (9th Cir.1982), is unhelpful given the Supreme Court's subsequent decision in Berkemer which clarified the scope of Miranda in the traffic stop context