**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 09-4706/10-1092

UNITED STATES OF AMERICA,

v.

HABEEB MALIK; IRA H. WEINER,

Appellants.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Nos. 2-08-cr-00614-001; 2-08-cr-00614-002)
District Judge:  Hon. R. Barclay Surrick

Submitted under Third Circuit LAR 34.1 (a)
on January 28, 2011

Before:  FUENTES, CHAGARES and ROTH, Circuit Judges

(Opinion filed: April 21, 2011)

O P I N I O N

**ROTH**, Circuit Judge:

On October 2, 2008, a grand jury in the Eastern District of Pennsylvania indicted

Ira Weiner, Habeeb Malik, and Thongchai Vorasingha with conspiracy to commit

naturalization fraud in violation of 18 U.S.C. §§ 371, 1425(a).  Count One charged all

three defendants with conspiracy to commit naturalization fraud, Counts Two through Ten charged Malik and Weiner with substantive counts of naturalization fraud, Counts Eleven and Twelve charged Malik and Vorasingha with two substantive counts of naturalization fraud, and Counts Thirteen through Sixteen charged Malik with filing false tax returns.

After a six-day trial, a jury convicted Weiner, Malik, and Vorasingha with the exception of Count 7. Weiner moved for a judgment of acquittal or new trial under Federal Rules of Criminal Procedure 29(c) and 33, and Malik and Vorasingha joined the motion. The District court denied the post-trial motions on December 7, 2009. C

On December 8, 2009, the District Court sentenced Weiner to thirty-six months imprisonment, two years supervised release, a $10,000 fine, and a $900 special assessment. Malik was sentenced to thirty-six months imprisonment, three years supervised release, and a special assessment of $1,500. Weiner, Malik, and Vorasingha all apealed. Vorasingha withdrew his appeal and filed an independent motion to vacate his conviction that is pending. On May 11, 2010, we consolidated the appeals of Weiner and Malik.

## I. **Background**

From 2000 to 2005, Malik operated a business called the Foundation for Human Services. The Foundation assisted immigrants in obtaining United States Citizenship.

Pursuant to federal immigration law, a foreigner seeking U.S. citizenship must be able to speak, read, and write English and to pass a history and civics exam, along with other requirements. If a person is unable to meet this requirement because of a physical

2

or mental impairment, an applicant is eligible for a waiver with the proper medical diagnosis.

For a fee of $1,500, Malik connected foreign applicants with doctors, including Weiner and Vorasingha. Weiner and Vorasingha examined the applicants and filed INS Medical Certification for Disability Exemption forms on their behalf. Weiner and Vorasingha certified applicants as "unable, because of a medically determinable physical or mental impairment or combination of impairments which has lasted or is excepted to last at least 12 months, to demonstrate an understanding of the English language." 8 C.F.R. §§312.1, 312.2.

In August 2001, Malik started bringing clients to Weiner. Malik paid Weiner approximate $120 for each certification of disability INS N-648 form that Weiner completed. Federal agents located a total of 76 forms that Weiner had completed in exchange for money from Malik. Weiner testified that he completed a total of 130 forms for Malik, finding in every case that the person examined was unable to learn English. In total, Malik paid Weiner more that $10,000 for the examinations and completed N-648 forms. Malik made more than $500,000 from the scheme, which he failed to report on his tax returns for 2002 through 2005.

## II. Discussion

### A. The Variance Between the Indictment and the Evidence.

Weiner claims as error the fact that there was variance between the indictment and the evidence. Variance occurs when "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those

3

alleged in the indictment." *United States v. De Cavalcante*, 440 F.2d 1264, 1271 (3d Cir. 1971). When an indictment charges defendants in a single conspiracy but the government instead proves separate, multiple conspiracies, variance has occurred. *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989). The "variance doctrine is designed to protect a defendant's right not to be tried *en masse* for the conglomeration of distinct and separate offenses committed by others. The doctrine recognizes that in some situations a 'jury might have been unable to separate offenders and offenses and easily could have transferred the guilt from one alleged co-schemer to another.'" *United States v. Salmon*, 944 F.2d 1106 (3d Cir. 1991) (citing *United States v. Camiel*, 689 F.2d 31, 38 (3d Cir. 1982)).

We have held that "[a] conviction must be vacated when (1) there is a variance between the indictment and the proof presented at trial, and (2) the variance prejudices a substantial right of the defendant.'" *United States v. Kemp*, 500 F.3d 257, 287 (3d Cir. 2007) (quoting *Kelly*, 892 F.2d at 258). However, an indictment will be deemed sufficient, even if variance occurred at trial, if the indictment "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he my plead a former acquittal or conviction in the event of subsequent prosecution." *Kemp,* 500 F.3d at 280 (quoting *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (internal quotation marks omitted)).

Weiner appeals his conviction on the basis that there was prejudicial variance between the indictment and the evidence proved at trial. Count One of the indictment

4

charged Malik, Weiner, and Vorasingha with a single conspiracy to commit naturalization fraud in violation of 18 U.S.C. § 371. The District Court concluded, however, that the evidence at trial demonstrated two conspiracies -- one conspiracy between Malik and Weiner, and another conspiracy between Malik and Vorasingha.

Nevertheless, even though there was variance, Weiner was not substantially prejudiced because there was little danger that the jury would convict one defendant on the acts of another (the "spillover" effect). *Kemp*, 500 F.3d at 291-92. Despite variance between the indictment and the evidence at trial, the government proved that both Weiner and Malik were guilty of conspiring to commit naturalization fraud. Weiner was sufficiently apprised of the charges against him and there was no chance of spillover evidence in that both Weiner's and Vorasingha's conduct was "discrete" and occurred at separate times. *See Kotteakos v. United States*, 328 U.S. 750, 774 (1946). The government demonstrated that Weiner engaged in a relationship and agreement with Malik, independent from Vorasingha. Weiner and Vorasingha never met or conducted business together. Weiner and Vorasingha's relationship with Malik was separated by two years time. In addition, the jury was instructed to compartmentalize the evidence of Weiner and Vorasingha's relationship with Malik.

For these reasons, we conclude that there was no chance of evidentiary spillover and that Weiner was not prejudiced by the variance.

**B. The Jury Instructions.**

District courts have great discretion in determining the language of their jury instructions, so long as the instruction adequately states the law. *See e.g. United States v.*

5

*Alkins*, 925 F.2d 541. 554 (2d Cir. 1991); *United States v. Hsieh Hui Mei Chen,* 754 F.2d 817, 825 (9th Cir. 1985) *cert. denied,* 471 U.S. 1139, (1985); *United States v. Taylor,* 562 F.2d 1345, 1364 (2d Cir. 1977), *cert. denied,* 432 U.S. 909 (1977).  For a jury instruction to be reversible error, the error must affect a substantial right and have unfair or prejudicial impact on the jury deliberations, resulting in manifest injustice. *United States v. Anderson,* 859 F.2d 1171, 1176 (3d Cir. 1988).

Weiner contends that the jury instruction here was improper because it did not refer to multiple conspiracies but instructed the jury regarding only a single conspiracy. The District Court instructed the jury that it must find the elements of a single conspiracy:  (1) an overall objective or a continuative core agreement, (2) a common goal, common methods, overlap of participants, and (3) a continuous objective that would not be achieved without the ongoing cooperation of the conspirators.  However, even though the District Court has determined that there were in fact two conspiracies, Weiner was not prejudiced by "spillover" evidence from Vorasingha. Weiner's conviction on various substantive counts of naturalization fraud indicates that the jury was not prejudiced by "spillover" evidence and found sufficient grounds independently to convict Weiner of conspiracy.  These substantive convictions invalidate Weiner's argument that the District Court's jury instructions were reversible error because of their prejudicial effect on Weiner.

We conclude that because Weiner was not prejudiced by the variance or by the instruction on single conspiracy, the conviction should not be overturned because of the jury instruction.

6

## C. Sufficienty of the Evidence.

Weiner contends that the government failed to prove that he was guilty of immigration fraud because the government did not show that he "intended to commit fraud." Weiner argues that the government did not prove that he acted in bad faith when diagnosing the applicants.

Weiner asserts that to prove bad faith or intent, the government had to produce an expert to explain to the jury the complexities of a legitimate medical inquiry. In particular, Weiner contends that an expert was necessary to explain to the jury the government's three main theories of Weiner's bad faith: Weiner's insufficient medical examination of the applicants, the telling difference between the population's percentage of mental retardation and Weiner's diagnoses of the condition, and the apparent normality of the applicants who testified as witnesses.

We do not agree. The question before the jury was not whether Weiner conducted medically insufficient diagnoses of the applicants but whether Weiner lied on the N-648 forms. The jury was never asked, as Weiner contends, to "look at a witness and decide whether that person actually has a development or learning disability." Instead, the jury was asked to determine if Weiner filled out the N-648 forms fraudulently and with the intent to lie.

Under the totality of the evidence presented, the jury could reasonably determine Weiner's intent and whether he lied on the N-648 forms. In light of the overwhelming evidence of Weiner's intent to commit naturalization fraud, "any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002).

### D. Weiner was Correctly Sentenced.

The facts considered at sentencing must be proven by a preponderance of the evidence. *See United States v. Watts,* 519 U.S. 148, 156 (1997), *per curiam*; *United States v. Grier,* 475 F.3d 556, 568 (3d Cir. 2007). A nine-level enhancement was added to Weiner's sentence because the fraud involved over 100 documents. Weiner objects to the enhancement. He argues that the facts supporting the enhancement were not proven by a preponderance. He asserts that, because the government only accounted at trial for 76 N-648 forms, he should not be sentenced based on documents not admitted into evidence.

At trial, Special Agent Krause from Immigration and Customs Enforcement (ICE) testified that ICE had located 76 N-648 forms that Weiner had filled out, certifying the candidate as unable to learn English. However, Weiner himself testified that he had completed 130 N-648 forms and admitted that he certified that each of the 130 people whom he examined could not learn English.

At the sentencing hearing, Weiner objected to the use of 130 N-648 forms because "it would be inappropriate for the court to infer and therefore to sentence Dr. Weiner on the theory that every single one of the 130 forms the he completed by his own testimony was false."

The District Court found that "with regard to these 76 forms, the fact that these forms were almost identical, based upon the fact that the burden here is by a fair

8

preponderance of the credible evidence, I'm satisfied that the calculation made by the probation office of 130 forms is an appropriate calculation and the enhancement of nine levels is an appropriate enhancement."

We conclude that the government did prove by a preponderance of the evidence that more than 100 fraudulent 76 N-648 forms were involved.

Moreover, the District Court imposed a sentence below the sentencing guidelines because Weiner received letters of support from high ranking friends in the community, had no prior criminal history, had a history of mental health problems and, in some respects, was punished by the reputational harm he suffered as a result of the criminal action. For these reasons the court decided to "impose a sentence that is below the sentencing guidelines" of 51 to 63 months and instead imposed only 36 months of incarceration.

### E. Marianne Martino's Aborted Testimony.

Malik, in his appeal, argues that Dr. Marianne Martino's aborted testimony created a negative inference in the jury's mind about Malik's guilt—an inference that was not cured by the court's instruction that the jury should disregard Dr. Martino's statements.

Weiner called Dr. Martino to testify as a defense witness. Dr. Martino testified to her relationship with Malik, which began in 2005 when he referred clients to her for the same disability testing that Weiner and Vorasingha preformed.

The District Court interrupted Dr. Martino's testimony when she stated that she had seen clients referred to her by Malik. Outside the presence of the jury, the judge informed Dr. Martino that anything she testified to could potentially be used against her

9

in a prosecution. She then stated that she did not wish to continue with her testimony. Weiner moved for a mistrial, and the District Court denied the motion.[1]

We weigh three factors in determining if a mistrial is appropriate for prejudicial witness testimony: "(1) whether [the witness's] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury; (2) the comparative strength of the other evidence; and (3) the curative action taken by the district court." *United States v. Riley*, 621 F.3d 312, 336 (3d Cir. 2010). Viewed in light of this test, Dr. Martino's aborted testimony did not prejudice Malik. First, Dr. Marino's testimony was very short, lasting only a few minutes, most of which was taken up by objections. Nor was her testimony either pronounced or persistent.

Furthermore, the District Court gave a curative instruction to the jury to completely disregard Dr. Martino's testimony. Although the abrupt end of her testimony may have confused the jury, it is very unlikely that her testimony inferred that her relationship with Malik was "criminal" or created prejudice among the jury members.

We conclude that it was proper not to declare a mistrial on the basis of Dr. Martino's aborted testimony. Her statements were short and inconsequential; the breadth of the other evidence against Malik is sufficient to uphold his conviction; and the District Court took immediate actions to cure any potential prejudice.

---

[1] Weiner does not appeal the denial of a mistrial in connection with Dr. Martino's aborted testimony.

10

**F. The Government's Use of Summary Evidence.**

Malik appeals the District Court's admission of summaries proffered by the government. However, the use of summaries and charts is proper and may be put before the jury with a limiting instruction. *United States v. Starnes,* 583 F.3d 196, 213-14 (3d Cir. 2009). Pursuant to Federal Rule of Evidence 1006, summaries or charts may be admitted into evidence at trial. The general rule is that the use of summaries is a matter that rests within the sound discretion of the District Court. *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 301 (3d Cir. 1961). To have a summary admitted, the proponent of a summary must lay a proper foundation and show that the summation is accurate. *Id.*

Malik objected to the District Court's admitting the government's chart representing 76 N-648 forms. On appeal, Malik contends that the chart "was not representative of all the forms that were filled out in connection with Appellant [Malik]" and that the chart is unfairly prejudicial. He argues that by representing only 76, rather than the 130 forms that Weiner testified to, the government's chart is inaccurate and unfairly prejudicial.

The government's exhibit summarized the 76 N-648 forms that federal agents were able to locate. They located only 76 forms because the remaining 54 individuals that Malik diagnosed had already been naturalized and the agents were unable to access the database of naturalized persons. The chart reflected that Weiner diagnosed 74 of the 76 clients with mental retardation, 70 with post-traumatic stress disorder, 69 with depression, and 63 with learning disabilities.

11

At the conclusion of the trial, the court instructed the jury that "certain charts and summaries were offered to you by the government and they were admitted into evidence. You may use these charts as evidence even though some of the underlying documents and records have not been admitted into evidence. You must decide how much weight, if any, you will give to these charts and summaries. That is entirely up to you. In making that decision you should consider the testimony about the way in which these charts and summaries were prepared."

As we held in *Prichard*, summary evidence is admissible so long as a proper foundation is laid and the summary is accurate. *Prichard,* 295 F.2d at 301. We conclude that the District Court did not err in admitting the summary here.

## III.  Conclusion

For the reasons stated above, we will affirm the judgment of the District Court.