NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2057
_____

UNITED STATES OF AMERICA

v.

LEE CARABALLO,
*Appellant*

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-14-cr-00255-001)
District Judge:  Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 1, 2016

Before:  SMITH, HARDIMAN and SLOVITER, *Circuit Judges.*

(Filed: March 3, 2016)
_____

OPINION*
_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SLOVITER, *Circuit Judge*.

Appellant Lee Caraballo challenges his convictions for carjacking in violation of 18 U.S.C. § 2119(1) and brandishing a firearm in furtherance of carjacking in violation of 18 U.S.C. § 924(C)(1)(A)(ii), as well as his sentence of 135 months imprisonment. We find no merit to his claims and will affirm.

## I.    Background

### A.    Carjacking

At about 1:30 a.m. on November 30, 2012, Victor Monterossa was backing up his Toyota Corolla in his driveway when a man wearing a black skull cap and black puffy jacket approached the driver's side window, pressed a gun against Monterossa's head, and ordered him out of the car. After he complied, the assailant pointed the gun at Monterossa and said, in Spanish, "Give me the money." The assailant then asked for Monterossa's phone, a black Apple iPhone model 4S, which Monterossa indicated was still in the car. At that point the assailant got into the car and fled.

Monterossa immediately called 911. When two police officers from the Newark Police Department arrived, Monterossa explained what happened and described the assailant as a Hispanic male, approximately 5'9" to 6" tall, 30 to 35 years old, 150-180 pounds, "light facial hair, black skully cap, wearing a large black bubble jacket, armed with a small silver handgun." App. at 441.

### B.    Traffic Stop

That same afternoon, Officer Mitchell White of the Roselle Park New Jersey Police Department stopped a black Mercedes, driven by defendant Lee Caraballo for having tinted front car windows in violation of N.J. Stat. Ann. § 39:3-75. Officer White approached the window and knocked on it, at which point Caraballo rolled the window down. Officer White immediately smelled the odor of "freshly burned marijuana." App. at 444. When asked for his driving credentials, Caraballo complied, indicating that he did not have an insurance card. White then asked Caraballo if he had been smoking marijuana in the vehicle; Caraballo replied that he had about an hour before.

White asked Caraballo if there was any marijuana in the vehicle. Caraballo replied that there was not and opened the trunk. The parties dispute whether Caraballo gave White permission to search the vehicle at this time. White then asked Caraballo to step out of the vehicle and Caraballo complied.

As Caraballo stepped out of the car, Officer White observed a box cutter clipped to Caraballo's right pocket. The officer removed the box cutter and asked Caraballo why he had it. Caraballo replied that he had it for work. Officer White asked him where he worked, to which Caraballo responded that he was not working at that time. During the course of this interaction, Officer White performed a protective pat-down search of Mr. Caraballo.

White explained that he was going to search the car, and Caraballo again consented. The officers found a partially smoked marijuana cigarette and a small plastic bag containing marijuana inside the Mercedes, as well as a blue flip phone, a black

3

jacket, two Toyota car keys, and a black Apple iPhone Model 4S.

While gathering Caraballo's personal items from the car, Officer White questioned him. The parties dispute whether Caraballo was read his *Miranda* rights before questioning and the exact content of the officer's inquiries. Nevertheless, the parties agree that Caraballo stated he did not know to whom the iPhone belonged and that he was the only person who drove the Mercedes. The entire conversation was in English. Caraballo was then brought to the Roselle Park police station.

At some point that day, Monterossa used a GPS application to track his phone. This tracking feature indicated that his phone was at the Roselle Park Police Department.

### C. Roselle Park Police Station

Officers at the station noticed that the iPhone recovered from Caraballo's car was receiving an alert that the iPhone's owner was attempting to track the phone's location. The Police Department then received a phone call from Monterossa, who explained that he had been carjacked by "a white Hispanic male, scruffy beard, wearing a black puffy jacket and a black winter hat." App. at 454.

Officer White recalled the black jacket he saw during his search of the Mercedes, so he asked Caraballo for consent to search again. Caraballo signed two written consent-to-search forms—one in English and one in Spanish. The officers returned to the Mercedes and recovered the black puffy jacket and placed it into evidence. Monterossa later came to the station, identified the iPhone and car keys as his and gave a statement describing the incident and the attacker.

4

**D.     Investigation**

On December 1, 2012, Monterossa's Toyota was recovered, and Lieutenant Ronald J. Micucci of the New Jersey State Police was assigned to investigate the carjacking.  Lieutenant Micucci prepared a photo array of six individuals, including Caraballo, to show to Monterossa.  Detective Carlos Olmo performed a double-blind photo array with Monterossa on December 7, 2015, which resulted in a positive identification of Caraballo.  The entire procedure was video recorded.

Monterossa also indicated that the black puffy jacket and skull cap found in Caraballo's car were similar to those worn by the carjacker.

**E.     Indictment, Pre-Trial Motions, & Trial**

A grand jury indicted Caraballo for carjacking in violation of 18 U.S.C. § 2119(1), and for brandishing a firearm in furtherance of carjacking, in violation of 18 U.S.C. § 924(C)(1)(A)(ii).  Caraballo moved to suppress out-of-court and in-court identifications, his own statements, and items seized from his car. After an evidentiary hearing in which Caraballo testified, the District Court denied his motions. Caraballo then proceeded to trial by jury where he testified that he had no involvement in the crime. He was ultimately found guilty as charged and sentenced to 135 months imprisonment.

**II.     Discussion**

**A.     Traffic Stop & NJ Stat. Ann. § 39:3-75**

Caraballo argues that the District Court erred in denying his motion to suppress the evidentiary fruits of Officer White's initial traffic stop. Caraballo maintains that the

stop was without reasonable suspicion because the statute barring "unduly tinted" windows under which he was pulled over, NJ Stat. Ann. § 39:3-75, is void for vagueness. However, he waived this argument by not raising it in his written motion to suppress. *See United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) ("[W]hen a party seeks reversal of a suppression ruling on appeal, any arguments not raised in the district court are waived absent a showing of good cause, and plain error review does not apply." (citing *United States v. Rose,* 538 F.3d 175, 184 (3d Cir. 2008) ).[1] Because Caraballo's void-for-vagueness argument was not properly presented to the District Court, we cannot reach the issue.

Caraballo argues alternatively that the traffic stop was made without reasonable suspicion because Officer White "failed to articulate how the particular windows of Defendant's car were unduly discolored under the statute," thereby "fail[ing] to provide[] specific, articulable facts that support an objective determination of reasonable suspicion." Caraballo Br. at 43 (citing *United States v. Delfin-Colina*, 464 F.3d 392, 399

---

[1] Caraballo points to defense counsel's passing argument during the District Court motion hearing that the statute lacked any objective basis for determining whether a car's windows were "unduly" tinted and that, as a result, stops for tinted windows in New Jersey were "all illegal stops." App. at 167. However, such a "fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal[.]" *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 262 (3d Cir. 2009). Rather, a party "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." *Shell Petroleum, Inc. v. United States,* 182 F.3d 212, 218 (3d Cir. 1999). Further, Caraballo's current argument does not "depend on both the same legal rule and the same facts as the argument presented in the District Court." *United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013).

(3d Cir. 2006)). However, Officer White stated in his report that he "observed dark tinting on the front windows" of Caraballo's vehicle, in violation of NJ Stat. Ann. § 39:3-75, and later testified at the evidentiary hearing that he could not see the occupant, thereby "deem[ing] it to be too darkly tinted." Supp. App. at 65-66, 79-80; App. at 200. The District Court examined photographs of the Mercedes and concluded that it had "no doubt that these windows were tinted." App. at 248. These facts meet the "undemanding standard" of reasonable suspicion. *Delfin-Colina*, 464 F.3d at 397. As a result, the Court did not abuse its discretion by denying Caraballo's motion to suppress.

## B. Pre-Arrest Statements

The pre-arrest interactions between Caraballo and the arresting officers can be divided into two separate exchanges that occurred (1) while Caraballo was still in the driver's seat and (2) after Caraballo exited the vehicle and Officer White observed a box cutter on his person.[2] The questioning at issue in these respective interactions consisted of Officer White asking Caraballo (1) if he had smoked marijuana recently and whether there was marijuana in the car and (2) why he had a box cutter and the follow-up question

---

[2] Caraballo argues that additional statements should be suppressed, claiming that he was asked questions regarding the iPhone and Toyota key while he was sitting on the sidewalk, prior to receiving *Miranda* warnings. However, the District Court did not credit his testimony as to this fact, and instead credited that of Officer White, who testified that he asked about these items after Caraballo had been placed under arrest and given *Miranda* warnings. As an appeals court, "[i]t is not for us to weigh the evidence or to determine the credibility of witnesses." *United States v. Petersen*, 622 F.3d 196, 201 (3d Cir. 2010) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)). The District Court's factual finding in this regard was not clearly erroneous.

7

of where he worked. Neither of these interactions constituted custodial interrogation for purposes of Caraballo's rights under *Miranda v. Arizona,* 384 U.S. 436 (1966).

The first exchange occurred very soon after Officer White pulled over Caraballo's Mercedes. Officer White's immediate questioning pursuant to the non-custodial traffic stop was reasonable in light of the circumstances, as it was designed to "confirm or dispel [his] suspicions quickly." *United States v. Anderson*, 859 F.2d 1171, 1177 (3d Cir. 1988). Officer White took no additional actions that would cause this interaction to rise from a non-coercive traffic stop to a curtailment of Caraballo's freedom of movement to "the degree associated with a formal arrest." *United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006) (quoting *United States v. Leese,* 176 F.3d 740, 743 (3d Cir. 1999)). As a result, Caraballo was not subject to custodial interrogation and the District Court did not err in denying Caraballo's motion to suppress as to this statement.

Nor was Caraballo subject to custodial interrogation when asked questions about his possession of a box cutter. Rather, the interaction proceeded as a lawful temporary investigatory detention within the limits authorized by the Supreme Court in *Berkemer v. McCarty,* 468 U.S. 420 (1984), as well as by this court in *Anderson* and did not exert "pressures that sufficiently impair[ed] [Caraballo's] free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Berkemer*, 468 U.S. at 437. The afternoon traffic stop was relatively brief and occurred in public— the same features found in *Berkemer* to "mitigate the danger that a person questioned will be induced 'to speak where he would not otherwise do so freely.'" *Id.* (quoting *Miranda*,

8

384 U.S. at 467). Further, Caraballo did not assert that the officers used any coercive tactics such as hostile tone or a display of weapons. As a result, we find that Caraballo was not in custody when asked about the box cutter.[3]

For these reasons, we will affirm the District Court's denial of Caraballo's motion to suppress his pre-arrest statements.

## C. Post-Arrest Statements

Caraballo argues that his post-arrest statements should be suppressed. We find that Caraballo validly waived his *Miranda* rights, and as a result, we will affirm the District Court's denial of his motion to suppress on these grounds.[4]

The only characteristic Caraballo points to in arguing that his *Miranda* waiver was invalid is that "he did not understand the *Miranda* warnings in the patrol car because his first language is Spanish." Caraballo Br. at 49. A language barrier may be a valid factor to consider in examining the validity of a waiver. *See United States v. Sriyuth*, 98 F.3d 739, 749 (3d Cir. 1996).

However, the District Court did not credit Caraballo's testimony that he

---

[3] Even if Caraballo had been in custody at the time he was asked about the box cutter, Officer White's questioning would not constitute "interrogation" requiring *Miranda* warnings. That is, he has not established that Officer White should have known that his questioning regarding why Caraballo had a box cutter and where Caraballo worked were "reasonably likely to elicit an incriminating response from the suspect." *United States v. Brownlee*, 454 F.3d 131, 146 (3d Cir. 2006) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)).

[4] Caraballo also argues the post-arrest statements should be suppressed as fruit of illegal pre-*Miranda* warning custodial interrogation. Because we find no *Miranda* violation in Caraballo's pre-arrest statements, *see supra*, the claim fails.

misunderstood the warnings given in English. In denying the motion to suppress the post-arrest statements, the Court noted that Caraballo spoke with Officer White in English throughout the traffic stop, never indicated to Officer White that he did not understand English or that he did not understand the *Miranda* warnings, and admitted to the District Court that he told Officer White that he did understand the warnings. As a result, the District Court found that, under the totality of the circumstances, Caraballo's waiver was uncoerced and made with requisite awareness of the right being abandoned. *See Moran v. Burbine,* 475 U.S. 412, 421 (1986). We do not find the District Court's factual finding that Caraballo understood the *Miranda* warnings to be clearly erroneous.

As a result, we will affirm the District Court's denial of Caraballo's motion to suppress his post-arrest statements.

**D.     Search of Car**

Caraballo claims that he did not consent to the search of his car at the traffic stop and that the additional consent forms signed at the police station were involuntary. The District Court, however, discredited Caraballo's testimony that he refused Officer White's request to search his Mercedes, as well as his claim that a language barrier made his consent involuntary. "It is ... well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973)). Once again, we find that the District Court did not clearly err in its factual determination that Caraballo did

understand English and did voluntarily consent at the traffic stop.

### E.    Pre-Trial Identification

The District Court denied Caraballo's motion to suppress Monterrosa's pre-trial identification as impermissibly suggestive. We review such a denial "for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006). We hold that the pre-trial identification in this case was neither unduly suggestive nor likely to create a substantial risk of misidentification.

First, the photo array itself was not impermissibly suggestive. The photo array in no way directed the witness' attention to Caraballo's photograph—all six photographs depict Hispanic men of similar age, weight, skin color, and hair color. *See* App. at 829. Five of the six men depicted, including Caraballo, have facial hair of similar length. There are no "characteristics of [the] defendant or photograph [that] set him apart from the other persons pictured in the array" and certainly none that "'sufficiently distinguish' [the] defendant to suggest culpability." *United States v. Burnett*, 773 F.3d 122, 133 (3d Cir. 2014) (quoting *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991)). As in *Burnett*, "any slight differences in the appearances of those depicted did not rise to the level of being unduly suggestive, and did not create a risk of misidentification." *Id.* at 133-34.

Furthermore, the procedures used were not unduly suggestive. Detective Olmo testified that he followed state guidelines for photo array procedures, including "not having the knowledge of the suspect, not having any knowledge of the intimate details of

11

the investigation," and "not having any contact with the victim." App. at 44. This "double-blind" procedure is highly recommended for reducing the risk of improper law enforcement suggestion. *See, e.g.*, *Hart v. Mannina*, 798 F.3d 578, 588 n.1 (7th Cir. 2015) (calling the procedure "preferred"); *State v. Henderson*, 27 A.3d 872, 896 (N.J. 2011) (recounting expert testimony that it is "the single most important characteristic that should apply to eyewitness identification" procedures).

Because of the proper use of this double-blind procedure, we agree with the Government that Caraballo's "[c]laims that Detective Olmo provided confirmatory feedback are illogical." Gov't. Br. at 42. Additionally, in performing the identification procedure, Detective Olmo presented Monterrosa with a form to sign, which included, *inter alia*, the instructions that he "should not conclude that the person who committed the crime is in the group merely because a group of photographs [were] being shown to [him]" and that he "**[did] not have to select any photograph**." App. at 828 (emphasis in original). The detective repeated these instructions out loud to Monterrosa.

The only additional fact Caraballo points to in arguing that the identification was impermissibly suggestive is the repetition by Lieutenant Ronald Micucci of one of the photo display instructions after the witness indicated that the photograph "look[ed] very much like" the person that carjacked him, but expressed some difficulty remembering particular features, including his "five o'clock shadow." App. at 854. Micucci pointed Monterrosa to the pertinent paragraph in the instructions: "Please keep in mind that hairstyles, beards and mustaches are easily changed." App. at 828, 854. Although not

preferable, given the context, this comment was not truly "confirmatory feedback"—a statement or action by police signaling that the witness has correctly identified the suspect. *See, e.g.*, *Henderson*, 27 A.3d at 899.

Ultimately, under a totality of the circumstances, the photo array procedures were not unduly suggestive and did not give rise to a substantial likelihood of irreparable misidentification.[5] As a result, we will affirm the District Court's denial of Caraballo's motion to suppress.

### F.  Lieutenant Micucci's Testimony

Caraballo claims the District Court erred by admitting four particular portions of Lieutenant Ronald Micucci's testimony. For the following reasons, we find that this testimony was properly admitted by the District Court.

#### 1.  Description of Suspect

Lieutenant Micucci testified at trial that when he became involved with the investigation, an arrest had already been made of a male that "matched the description . . . the victim had provided in the carjacking." App. at 496. Caraballo claims that this testimony was hearsay and violated Caraballo's rights under the Confrontation Clause of

---

[5] Caraballo also challenges the admission of Monterrosa's in-court identification as tainted by the pre-trial identification. However, because we find the pre-trial identification to be properly admitted, this claim fails. *See Reese v. Fulcomer*, 946 F.2d 247, 262 (3d Cir. 1991) ("[T]he victim's pretrial identification procedures created no substantial likelihood of irreparable misidentification at the trial.")

the Sixth Amendment.[6]

The District Court allowed the testimony for the limited purpose of establishing the status of the investigation when Micucci became involved and "what caused him to do or not do" things later in the investigation, in anticipation of cross-examination regarding the thoroughness of the investigation. App. at 501-504. This testimony offered background regarding Micucci's investigation, and was not hearsay. *See United States v. Price*, 458 F.3d 202, 211 (3d Cir. 2006) (allowing police testimony of background information when "necessary for an adequate explanation" of the officer's actions); *see also* Fed. R. Evid. 801(c). Nor did the testimony violate Caraballo's rights under the Confrontation Clause, which "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

### 2. Photo from Prior Arrest

Caraballo claims that the District Court erred by admitting evidence of his prior arrest, the probative value of which he argues was "greatly outweighed by the unduly prejudicial nature of the evidence," in violation of Federal Rule of Evidence 403. Caraballo Br. at 58. "We review a district court's decision to admit or exclude evidence for abuse of discretion, and such discretion is construed especially broadly in the context

---

[6] Caraballo also intimates that the testimony was improper opinion testimony. However, Micucci did not offer an opinion as to whether Caraballo matched the initial description of the suspect. Rather, he described his belief that a suspect matching the victim's description was already in custody as context for his subsequent decision-making.

of Rule 403." *United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007) (quoting *United States v. Mathis,* 264 F.3d 321, 326-27 (3d Cir. 2001)).

The record, however, indicates that no testimony regarding any prior arrest was elicited. Rather, Lieutenant Micucci testified on direct examination that the photograph in the photo array was taken two to three months prior to the date of the carjacking incident. App. at 513. This testimony was permitted for the explicit purpose of rebutting Caraballo's contention in his opening statement that the photo array was unreliable. We find that the District Court did not abuse its discretion in allowing this testimony.

### 3. Frequency of Fingerprint Recovery

Lieutenant Micucci later testified that in his experience as an investigator specializing in carjackings, he found fingerprints in approximately 20 percent of cars recovered and that fingerprints "[v]ery infrequently" resulted in investigative leads. App. at 524, 528. This estimate was rationally based on Lieutenant Micucci's observations in his 19-year experience as a police officer, during which he investigated 350 to 400 carjackings (130 as lead investigator), was helpful for the jury to assess his investigation, and was not based on any specialized knowledge. As a result, it was a proper lay opinion, and was properly admitted. *See* Fed. R. Evid. 701.

### 4. Recitation of Evidence Collected

Micucci also testified that he returned the Toyota to Monterossa without dusting for fingerprints because, based on the evidence that had been gathered at that point, he

15

did not feel it was necessary. He was then asked to list "what it was that [he] knew that made [him] feel that [he] did not need to dust the car for prints." App. at 534. He responded by stating that their first concern was to return the car to the victim. He then listed the evidence that caused him to feel "at that point [that] it was prudent to give Mr. Monterossa his car back." App. at 535. This included the positive identification of Caraballo by the victim, Caraballo's clothing that matched the description given by the victim, and the victim's personal property being found in Caraballo's vehicle.

This testimony was not offered to prove the truth of the evidence that was collected, but rather was offered as necessary context for Lieutenant Micucci's decision to give back Monterossa's car without having fingerprints taken. As a result, it was not hearsay and did not violate Caraballo's Confrontation Clause rights. *Price*, 458 F.3d at 211; *Crawford*, 541 U.S. at 59 n.9.

### G. Sufficiency of Evidence

Caraballo challenges the sufficiency of the evidence against him. In deciding such a challenge, we exercise plenary review. *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Viewing the evidence in a light most favorable to the Government, a rational juror would have more than sufficient evidence to find beyond a reasonable doubt that

16

Caraballo had committed this crime. This evidence included the in-court and out-of-court identification of Caraballo as the carjacker, Monterossa's identification of a black jacket and skull cap found in Caraballo's possession as those worn by the assailant, and the retrieval of Monterossa's car keys and iPhone in Caraballo's possession hours after the crime. This claim fails.

## H.    Obstruction of Justice Enhancement

Caraballo testified on his own behalf that he believed—and told investigating offers at the time of his arrest—that the black iPhone was left in his car by an acquaintance of his named "Primo." App. at 119. He did not expand on this belief on direct examination, but when pressed on cross examination, stated that he paid Primo $50 for the phone at around 6 or 7 a.m that morning when he ran into him at a stop sign in Newark. App. at 140. When asked where he got the Toyota keys, Caraballo testified that he "found them on the passenger's side on the floor" of his car. App. at 143. The District Court summarized this testimony at sentencing as the defendant "claim[ing] that he had nothing to do with the carjacking." App. at 790.

The District Court concluded that an obstruction of justice sentencing enhancement pursuant to U.S.S.G. § 3C1.1 was warranted, finding the defendant's testimony to be false, material, and willful—the three required elements of perjury. Caraballo claims that the District Court erred. We disagree.

"[A] guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." *United States v. Boggi*, 74 F.3d 470, 478-79 (3d Cir.

17

1996).  Because there is no way to reconcile Caraballo's testimony with the jury's verdict, the testimony is material to his guilt, and there is no basis for attributing it to "confusion, mistake, or faulty memory," the District Court did not err in applying the sentencing enhancement.  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *see also* U.S.S.G. § 3C1.1.

## I.    Reasonableness of Sentence

Finally, Caraballo argues that the District Court abused its discretion by denying his request for a downward variance based on upbringing, mental health, and drug abuse and challenges as substantively unreasonable his bottom-of-the-guidelines sentence of 135 months incarceration.  Instead, he argues that he should have received the 7-year mandatory minimum term for the § 924(c) conviction, claiming that such a sentence would be "sufficient but not greater than necessary" to meet the sentencing goals under 18 U.S.C. § 3553(a).  Caraballo Br. at 60. This claim fails.

The District Court engaged in "a true, considered exercise of discretion . . . including a recognition of, and response to, [Caraballo's] non-frivolous arguments," thoroughly considering his request for a variance and extensively discussing each of the § 3553(a) factors. *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006).  The Court acknowledged that Caraballo was "struggling with some mental health issues," App. at 809, and concluded that Caraballo was "deserving of at least some credit for having a minimal record, and for attempting to be a good father," App. at 810, but determined that the appropriate sentence, in light of all of the sentencing factors, was at the bottom of the

18

Guidelines range. App. at 796, 811. Applying an abuse of discretion standard, we find that the sentence was "procedurally sound" and substantively reasonable. *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

**III.   Conclusion**

For the foregoing reasons, we will affirm the judgment of the District Court.