NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-2687 and 09-2715
_____

UNITED STATES OF AMERICA

v.

MARVIN ALEJAMDRO SANCHEZ,
Appellant
_____

UNITED STATES OF AMERICA

v.

JOSE EDWIN BALTAZAR NORALES,
Appellant
_____

Appeals from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-08-cr-00490-001 and 002)
District Judge: Honorable Stewart Dalzell
_____

Submitted Under Third Circuit LAR 34.1(a)
October 26, 2010
_____

Before:  McKEE, <u>Chief</u> Judge, SLOVITER and RENDELL, <u>Circuit</u> <u>Judges</u>

(Opinion Filed:  October 28, 2010)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Appellants Jose Edwin Baltazar Norales and Marvin Alejamdro Sanchez appeal the District Court's denial of their motion to suppress physical evidence. We will affirm.[1]

On July 21, 2008, State Police Trooper Jackson received an anonymous tip stating that Appellants Norales and Sanchez checked into a Microtel Hotel in Philadelphia without a reservation, paid in cash, rented the room for one night at a time, and used a passport as identification, which indicated that Sanchez was from Texas.

Trooper Jackson and members of the High Intensity Drug Trafficking Area Task Force (HIDTA) conducted surveillance on the defendants' hotel from July 21, 2008 through July 22, 2008. On July 22, 2008, Appellants departed the hotel in a taxi without any luggage, and proceeded to a Wal-Mart parking lot, where they exited and separated from each other. While Norales remained in the parking lot, Sanchez walked towards a McDonald's. An unidentified Hispanic male, carrying a white bag, followed Sanchez into the restaurant but remained twenty feet behind. Sanchez and the unidentified male entered the McDonald's restroom and remained there for several minutes, during which time Trooper Jackson lost sight of them. Sanchez and the unidentified male then exited the McDonald's, with the unidentified male still carrying the white bag. The surveillance team

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

2

never observed either individual purchase food. Appellants then reunited in the parking lot, where a taxi picked them up, stopped at a gas station, and then proceeded north on Interstate 95.

At the same time, other officers searched Appellants' hotel room and uncovered a one-way train ticket from New York City to Philadelphia. Trooper Nigro overheard the surveillance chatter via a two-way radio, and contacted Jackson to inquire whether the team needed assistance. Jackson requested assistance, and Nigro informed Trooper Santiago that the taxi passengers were suspected drug dealers, and warned him at least three times that they might be armed and dangerous. Nigro instructed Santiago to stop the taxi if he had probable cause.

Santiago located the taxi and pulled it over because he observed an obstruction hanging from the taxi's rearview mirror, in violation of the Pennsylvania Motor Vehicle Code. Santiago approached the taxi and noticed that Norales glanced at him and then stared straight ahead, while Sanchez turned his shoulders to look at Santiago while keeping his hands in a suspicious place near his waist. Santiago asked Sanchez to exit the vehicle and patted him down. Santiago felt what he believed to be gun holsters attached to Sanchez's ankles, removed the objects, and placed the objects, which proved to be packages, on the taxi's trunk.

Corporal Casciano, a supervisor on the HIDTA and a member of the surveillance team, arrived at the scene as Santiago was searching Sanchez.

3

Casciano opened a package that Santiago had taken from Sanchez and determined that the package contained drugs; subsequent tests confirmed the substance was heroin. Casciano then asked Norales to exit the vehicle and inquired whether Norales would mind if Casciano searched his pockets. Casciano testified that Norales possibly replied "No" and held up his hands as if to suggest "go ahead." Although Norales testified, via an interpreter, that he does not understand English, FBI agent Bain testified that he was present when Norales was processed, and that throughout the process, Norales showed no difficulty understanding the many questions posed to him in English. Casciano discovered in Norales's pocket a package similar to the ones found on Sanchez, which was later determined to contain heroin.

**<u>Discussion</u>**

Appellants challenge the legality of the searches conducted by law enforcement after stopping the taxi, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). They assert that law enforcement lacked reasonable suspicion that Appellants were engaged in criminal activity or that they were armed and dangerous.[2] We disagree.

A police officer may stop and search an individual if the officer has a "reasonable, articulable suspicion that criminal activity is afoot" and that the individual is armed and dangerous. *See, e.g.*, *United Gatlin*, 613 F.3d 374, 378

---

[2] We review the District Court's ruling on Appellants' suppression motion for clear error as to the Court's factual findings, but exercise plenary review over the legal findings. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

(3d Cir. 2010) (*quoting Terry*, 392 U.S. at 30).  In assessing whether an officer had the requisite reasonable suspicion necessary to justify a vehicle stop, courts consider the totality of the circumstances from the perspective of an objective law enforcement officer.  *See, e.g.*, *United States v. Silveus*, 542 F.3d 993, 1000 (3d Cir. 2008); *Whren v. United States*, 517 U.S. 806, 813 (1996).  "[T]o rise to a reasonable suspicion, [the totality of the circumstances] must 'eliminate a substantial portion of innocent travelers' or describe 'behavior in which few innocent people would engage.'"  *United States v. Mathurin*, 561 F.3d 170, 178 (3d Cir. 2009) (citation omitted).  Indeed, simply because a fact could be construed as "innocent" does not mean that reasonable suspicion is lacking; the dispositive question remains whether the circumstances collectively would describe innocent behavior.  *See United States v. Arvizu*, 534 U.S. 266, 274 (2002).

Finally, where an officer stops a vehicle based upon a request from another officer, the requesting officer must have reasonable suspicion to justify the stop. *United States v. Coward*, 296 F.3d 176, 179-80 (3d Cir. 2002) ("Assuming the police made a *Terry* stop in objective reliance on a flyer or bulletin . . . the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop").[3]

---

[3] The parties agree that Trooper Jackson, as the requesting officer, must have had reasonable suspicion that Appellants were engaged in criminal activity and that they were armed and dangerous in order to justify the searches.  (Appellant Brief at 15; Appellee Brief at 21.).  Appellants assert that Jackson's hesitancy and

5

Ample testimony at the suppression hearing supported the conclusion that, when viewed from the perspective of an objective officer, Appellants' actions combined to create a reasonable suspicion that they were engaged in criminal activity and that they could be armed and dangerous. The District Court found that Appellants: (1) arrived at a hotel without a reservation; (2) only reserved the room for one night; (3) paid in cash; (4) carried no luggage; (5) used a passport as identification, which indicated that Sanchez was from Texas; (6) possessed a one-way train ticket from New York to Philadelphia; (7) loitered around and in the McDonald's with an unidentified individual without buying food; (8) hailed a taxi; and (9) stopped for gas before heading north on Interstate 95. When viewed cumulatively, the above conduct "describes behavior in which few innocent people would engage" and provided Trooper Jackson with objectively reasonable suspicion to request the stop. *Mathurin*, 561 F.3d at 178 (quotations and citation omitted).

The District Court also focused on the need for safety given the possibility that these individuals could be armed. We have upheld a safety frisk where an officer suspected the defendants were engaged in drug trafficking and "became concerned for his safety because persons involved with drugs often carry weapons." *United States v. Anderson*, 859 F.2d 1171, 1177 (3d Cir. 1988). We

refusal to pull over the taxi himself indicates that he lacked reasonable suspicion to believe that criminal activity was afoot. This argument is unavailing since reasonable suspicion analysis is objective and Jackson's "subjective motive or intent is not relevant for *Terry* purposes." *United States v. Goodrich*, 450 F.3d 552, 559 (3d Cir. 2006).

held that "[t]his procedure is the very essence of the practice sanctioned by *Terry v. Ohio*." *Id.*; *see also United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009) ("[A]n officer's reasonable belief that someone is involved in drug dealing can support a suspicion that the person is armed since weapons are often present incident to the drug business"). Given that drug traffickers often carry weapons and reasonable suspicion existed that the Appellants were drug dealers, the troopers reasonably suspected that both Appellants were armed and dangerous, justifying the minimally invasive search. Accordingly, we do not find error in the District Court's determination that an experienced law enforcement officer had reasonable suspicion to stop and search Appellants.

**Conclusion**

For the foregoing reasons, we will affirm the District Court's decisions on all grounds.