NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3895
_____

UNITED STATES OF AMERICA

v.

FRANK MURPHY,

Appellant

_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 2:09-cr-0082-003)
District Judge:  Hon. Gustave Diamond

_____

Submitted Under Third Circuit L.A.R. 34.1(a),
January 9, 2012

BEFORE:  FUENTES, JORDAN, and NYGAARD, *Circuit Judges*

(Opinion Filed: February 15, 2012)

_____

OPINION OF THE COURT

_____

FUENTES, *Circuit Judge*.

Appellant Frank Murphy was convicted by a jury of conspiracy to distribute and

possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §

846.  The District Court sentenced Murphy to 72 months' imprisonment.  Murphy

appeals his conviction and sentence, contending that the District Court erred when it overruled his objection to the composition of the jury venire and when it denied his motion for a mistrial. For the reasons set forth below, we will affirm the judgment of the District Court.[1]

## I.

Because we write only for the parties, we recount only those facts necessary to our decision.

Based on information received from an informant, the Pennsylvania State Police pulled over a car they believed was being used to transport cocaine to a drug sale. Frank Murphy was a passenger in the car. The police obtained a search warrant for the car and found a piece of luggage with a kilogram of cocaine in it. Murphy was arrested.

During jury selection, Murphy's counsel objected to the composition of the jury venire.[2] Though the record is unclear at exactly what point he objected, it is clear he objected well after jury selection was underway. While at a side-bar discussing challenges for cause to certain jurors, Murphy's counsel stated:

> While we're – while we're at side bar, I didn't want to interrupt the proceedings here on behalf of my client, Frank Murphy, who happens to be an African American male and Mr. Pete is also an African American male, we have no African Americans on this jury panel, and I would object to the selection, using this panel at this time.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] The jury venire was created pursuant to a plan approved by then-Chief Judge Scirica in April 2009. S. App. 3.

S. App. 23.[3]  After being informed that the panel was selected at random by a computer, the District Court overruled the objection.  Counsel did not seek a stay of the proceedings at that time.

During the trial, the Government called Sergeant Shawn Spence of the Henderson North Carolina Police Department to testify about stopping a car in which Murphy was a passenger roughly six weeks prior to his arrest. During cross-examination, he testified, in pertinent part, as follows:

> Q. Okay. You thought they [referring to Murphy and the other passengers] were selling narcotics, right?
>
> A: Selling narcotics, yes, sir.
>
> Q: Didn't you write in your report you thought they were involved in robberies?
>
> A: Yes.
>
> Q: So what was it?
>
> A: I wasn't certain what they were doing. I contacted ATF, I contacted DEA, I contacted the Violent Crimes Unit in New York, gave them all the information. We put out BOLOs along the east coast, because there's three handguns, three suspects, they had three sets of gloves found in the car that they purchased in New York. Based on my training and experience, coming from Arizona or coming from New York and then going back to Arizona, which were both source areas for narcotics—narcotics come across the border—the southwest border is where most of the narcotics come across.  I also learned that Mr. Murphy through the SPI on the side of the road had been convicted of drug charges, so I believed they were transporting narcotics.

---

[3]  Murphy did not include copies of any of the trial transcripts in his appendix.  We rely on the Supplemental Appendix filed by the Government, which included copies.

S. APP. 65-66. Murphy's counsel objected to the officer's reference to Murphy's prior drug conviction. At a side-bar, the District Court ruled that it would not grant a mistrial based on the testimony. Murphy's counsel declined the District Court's repeated offers to provide the jury with a limiting instruction. After the jury found Murphy guilty, he moved for a new trial, which the District Court denied.

## II.

Whether a defendant has been denied his right to a jury selected from a fair cross section of the community is a mixed question of law and fact, and is reviewed de novo. *United States v. Weaver*, 267 F.3d 231, 235 (3d Cir. 2001).

A criminal defendant has the right to be tried by an impartial jury "drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, --- U.S. ---, 130 S.Ct. 1382, 1387 (2010). The appropriate time for objecting to the composition of the jury venire is "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefore, whichever is earlier." 28 U.S.C. § 1867(a), (e). Because Murphy's counsel would have seen the composition of the venire as it assembled in the courtroom but did not object until after jury selection was well under way, he has waived any such objection to the venire's composition. *Id.*; *United States v. Green*, 742 F.2d 609, 612 (7th Cir. 1984) ("In the absence of strict compliance [with 28 U.S.C. § 1867], [defendant's] attempt to challenge the jury venire on constitutional grounds is without legal effect and is futile.").

Even if the objection was not waived, Murphy has not presented any evidence that the selection process used to create the jury pool was deficient. To establish a violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). African-Americas are a "distinctive" group and thus the first prong is satisfied. *Weaver*, 267 F.3d at 240. Satisfying the second prong requires the introduction of statistical data and Murphy "must demonstrate the percentage of the community made up of the group alleged to be underrepresented." *Id.* at 240. Murphy has not even attempted to satisfy the second prong. There is no evidence in this record that Murphy's counsel sought discovery or a hearing before the District Court regarding the Western District of Pennsylvania's jury selection plan. Before this Court, Murphy only presents the census data from the various counties within the district. This is plainly insufficient to satisfy the *Duren* test. Thus, the District Court properly overruled Murphy's objection.

B.

As to the argument that Murphy's motion for a mistrial should have been granted because of the reference a government witness made to Murphy's prior conviction, the complained-of comment came in response to the open-ended question posed by defense

counsel on cross-examination and so was no basis for a mistrial under these circumstances. *See, e.g., United States v. Neal*, 78 F.3d 901, 904 (4th Cir. 1996) (where challenged comments by witness "were elicited by [defendant's] own attorney from a government witness during cross-examination[,]" the defendant "invited the error and therefore it provides no basis for reversal"); *Weinar v. Rollform Inc.*, 744 F.2d 797, 805 (Fed. Cir. 1984) (under "invited error" rule, counsel "cannot now be heard to complain that the witness answered his questions"); *McBride v. United States*, 409 F.2d 1046, 1048 (10th Cir. 1969) (rejecting defendant's argument that he was unfairly prejudiced by testimony of government witness and noting that "the objectionable answer was given in response to a question asked by defense counsel on cross-examination")."

## III.

The judgment and sentence of the District Court will be affirmed.