**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-1487
_____

UNITED STATES OF AMERICA

v.

RODNEY WESLEY FRIERSON,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cr-00751-001)
District Judge: Honorable Mitchell S. Goldberg

_____

Argued January 13, 2015

Before: AMBRO, FUENTES and ROTH, <u>Circuit Judges</u>

(Opinion filed: June 2, 2015)

Keith M. Donoghue, Esquire          **(Argued)**
Federal Community Defender Office for the
Eastern District of Pennsylvania
The Curtis Center, Suite 540 West
601 Walnut Street
Philadelphia, PA 19106

Counsel for Appellant

Randall Hsia, Esquire    **(Argued)**
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

_____

OPINION[*]

_____

ROTH, <u>Circuit Judge</u>

Defendant Rodney Frierson appeals his conviction for conspiracy to possess with the intent to distribute, and possession with intent to distribute, 500 grams or more of cocaine; possession of a firearm in furtherance of drug trafficking; and being a felon in possession of a firearm. Frierson argues that the District Court erred by failing to suppress evidence obtained during a detention and frisk, and by denying his motion for new trial. For the reasons that follow, we will affirm.

**I.**

At around 10:30 a.m. on January 15, 2010, Pennsylvania State Trooper Justin Hope was positioned at an entrance ramp to the Pennsylvania Turnpike and observed two men in an SUV, with an Ohio license plate, entering the Turnpike. Hope followed the vehicle and, at around 10:44 a.m., pulled it over for speeding. Hope later testified that, based on his experience, there were several circumstances making him suspicious that the

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

men might be trafficking drugs. He noted that (1) there were two people in the vehicle, (2) the vehicle was a rented SUV with an out-of-state license, (3) the driver did not look at him as he passed and had his hands in the "10-and-2 position" on the wheel, (4) it was mid-Friday morning, and (5) the men were driving away from Philadelphia.

Once Hope approached the vehicle, he requested the driver's license and registration. Frierson, who was driving the vehicle, handed Hope his California license and an Enterprise rental agreement. Angel Anderson, the passenger, also gave Hope a California license and told Hope that he had rented the car. Hope noticed three cell phones in the SUV's center console.

When Hope returned to his vehicle, he ran Frierson and Anderson's licenses and discovered that Frierson had an extensive criminal history, including convictions for voluntary manslaughter, possession of an assault weapon and body armor, and cocaine possession, transportation, or sale. Hope then contacted his backup, Trooper Luke Straniere, and attempted to locate a K-9 sniffing unit. Hope also sought information from the El Paso Intelligence Center, which reported Frierson had crossed into Mexico from California four times in 2009. Hope also reviewed the rental agreement, which had expired over a week earlier and indicated that Anderson was the only authorized driver.

At 11:10 a.m., Straniere arrived. At this time, Hope approached the SUV again. Anderson explained that the rental agreement had been extended, and Hope told them that Anderson was going to have to drive the car. At approximately 11:14 a.m., Straniere confirmed from Enterprise that the rental agreement had been extended and learned that Anderson rented from Enterprise five times in the previous four months.

3

The officers then approached the SUV and asked Frierson to exit the vehicle. After Frierson refused to consent to a frisk or respond to questions regarding his criminal history, Straniere patted him down and felt a gun on his right side. Because Frierson had a felony conviction, he was arrested for being a felon in possession of a firearm. The troopers later seized 995 grams of cocaine from luggage in the SUV.

## II.[1]

Frierson first argues that the extension of the traffic stop violated his rights under the Fourth Amendment. "A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation."[2] The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns."[3] Authority for the seizure therefore ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed."[4]

An officer may, however, expand the scope of a traffic stop and detain the vehicle and its occupants for further investigation if he "develops a reasonable, articulable

---

[1] "We review a district court's order denying a motion to suppress under a mixed standard of review. We review findings of fact for clear error, but we exercise plenary review over legal determinations." *United States v. Lewis,* 672 F.3d 232, 236-37 (3d Cir. 2012) (internal citation omitted). We review rulings on admissibility of expert testimony for abuse of discretion, *United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999), but conduct plenary review over whether the error was harmless, *see Arizona v. Fulminante*, 499 U.S. 279, 295 (1991).

[2] *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

[3] *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)); *see Johnson*, 555 U.S. at 333.

[4] *Rodriguez*, 135 S. Ct. at 1614.

suspicion of criminal activity."[5] "While 'reasonable suspicion'" must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop."[6] Courts must consider the totality of the circumstances in light of the officer's experience.[7] While "individual factors giving rise to reasonable suspicion may be innocent in isolation, together they 'must serve to eliminate a substantial portion of innocent travelers.'"[8]

Upon initially detaining the men, Hope reasonably addressed the traffic violation that warranted the stop and attended to safety concerns. For example, any preliminary delay in checking Frierson's license, registration, and criminal history was justified as part of the stop.[9] Similarly, it was reasonable for Hope to delay the stop in order to investigate who was authorized to drive the rental car.[10] Once Hope discovered Frierson's criminal history, he decided to wait for backup out of concern for his safety in effectuating the traffic stop. Although Straniere did not arrive until 11:10 a.m., twenty-six minutes into the stop, this delay was not due to Hope's unreasonable actions but to circumstances beyond his control.

---

[5] *United States v. Givan,* 320 F.3d 452, 458 (3d Cir. 2003).
[6] *Id*.; *see United States v. Sokolow*, 490 U.S. 1, 13 (1989).
[7] *United States v. Arvizu*, 534 U.S. 266, 273 (2002).
[8] *United States v. Mathurin*, 561 F.3d 170, 174 (3d Cir. 2009) (quoting *Karnes v. Skrutski*, 62 F.3d 485, 493 (3d Cir. 1995)).
[9] *See Rodriguez*, 135 S. Ct. at 1615; *see also United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).
[10] *Accord Rodriguez*, 135 S. Ct. at 1615 (concluding that police inquiries meant to "ensur[e] that vehicles on the road are operated safely and responsibly" are part of an officer's mission in conducting a traffic stop).

Once Straniere arrived, he and Hope acted reasonably in calling Enterprise to determine whether the rental agreement had been extended. At this point, Hope had reasonable and articulable suspicion that Frierson and Anderson may have been trafficking drugs, justifying the expansion of the investigation's scope. The factors were: (1) the SUV and its occupants were from another state, (2) the SUV was a rental, (3) there were three cell phones in the console, (4) Frierson had an extensive criminal history, (5) Frierson had crossed into Mexico four times in 2009, and (6) Anderson had rented five cars in the past four months. Although some factors are innocent individually, together they eliminate a substantial portion of innocent travelers and therefore give rise to reasonable suspicion.

Frierson next argues that the subsequent frisk was invalid. An officer may perform a frisk if he has reasonable suspicion that the individual is armed or dangerous based on the totality of the circumstances.[11] The purpose is "not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence."[12] Here, the officers had reasonable suspicion to believe that Frierson was dangerous based on his violent history and on their suspicion that he was engaged in drug trafficking.[13] Their safety concerns were also justified by Frierson's appearance—specifically, that he

---

[11] *See Pennsylvania v. Mimms*, 434 U.S. 106, 111-13 (1977) (per curiam).
[12] *United States v. Gatlin*, 613 F.3d 374, 378 (3d Cir. 2010) (internal quotations omitted).
[13] *See United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009); *see also United States v. Anderson*, 859 F.2d 1171, 1177 (3d Cir. 1988).

wore a loose long-sleeved shirt that extended below his waist. Accordingly, it was

reasonable to conclude that a frisk was necessary to ensure the officers' safety.[14]

### III.

For the foregoing reasons, we will affirm the District Court's denial of Frierson's

motion to suppress and motion for a new trial.

---

[14] Frierson also claims that the District Court erred in denying his motion for a new trial, based on DEA Agent Randy Updegraff's testimony at trial. Updegraff testified that Frierson and Anderson were working "in concert" to distribute cocaine and that defendants in another case were "smarter than Frierson." Although the first comment opines on Frierson's state of mind, *see* Rule 704(b), Updegraff gave it in response to defense counsel's question regarding "this particular case" and therefore was invited error. *See United States v. Murphy*, 464 F. App'x 60, 63 (3d Cir. 2012). In any event, any error was harmless in light of the overwhelming evidence against Frierson.