# IN THE COURT OF APPEALS OF IOWA

No. 14-1724
Filed December 23, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ANTHONY EUGENE ENGLISH,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink (suppression) and Karen A. Romano (trial and sentencing), Judges.

The defendant appeals the district court's order denying his motion to suppress and challenges the sufficiency of the evidence supporting his conviction. **AFFIRMED.**

Kevin E. Hobbs, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General.

Considered by Danilson C.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, Judge.**

Following a trial on the minutes, the defendant Anthony English was convicted of possession of a controlled substance with intent to deliver, in violation of Iowa Code section 124.401(1)(c)(3) (2013), and failure to possess a tax stamp, in violation of Iowa Code sections 453B.3 and 453B.12. On appeal, English challenges the order denying his motion to suppress evidence obtained after an allegedly unlawful traffic stop and search of his person. He also challenges the sufficiency of the evidence supporting his conviction for possession of a controlled substance with intent to deliver.

I.

Between midnight and three in the morning on March 12, 2014, Officer Nicolino was surveilling a suspected drug activity house. Nicolino observed a Chevy Avalanche truck leave the house. Suspecting the driver of the truck was involved in drug activity, Nicolino followed. Nicolino observed white light emitting from the left rear brake lamp and observed the vehicle cross the centerline of the street. Nicolino activated the emergency lights of his vehicle to initiate a traffic stop, but the driver of the Avalanche did not stop. Nicolino activated the vehicle siren, but the driver of the Avalanche continued ahead for several blocks before stopping. Because the driver had not pulled over and stopped in a reasonable period of time, Nicolino requested backup. As Nicolino approached the stopped vehicle, the driver put his license or identification outside the window and then rolled the window up. Nicolino instructed the driver to turn off the truck ignition and roll the window down. When Nicolino asked the driver where he had come

from, the driver provided false information. While the driver, now determined to be Anthony English, nervously searched through the glove box for the vehicle registration and proof of insurance, one of the backup officers who had arrived at the scene observed a large knife inside the glove box. Nicolino then instructed English to exit the truck for a pat-down frisk.

While Nicolino was conducting the pat-down frisk, English took evasive action to avoid the frisk and conceal something on his person. At the suppression hearing, Officer Nicolino testified when he reached the waistband of English's pants, English repeatedly moved forward in a crouching motion "as if he was maybe concealing something and didn't want me patting down that area of his person." Despite English's evasive action, Nicolino felt a bulge on the front left side of English's pants. Nicolino told English he believed English was concealing something in his pants and he was going to handcuff English and check. English said, "That's fine. Go ahead."

Nicolino escorted English away from his vehicle and towards Nicolino's patrol car to conduct a more thorough search. Nicolino pulled up English's jeans, which English wore low below his waist, and shook them. When Nicolino patted down the front of English's jeans, Nicolino did not feel the bulge in the left front. Nicolino shined his flashlight down inside English's jeans, but he did not see any item or items secreted away. At that point, Nicolino removed the handcuffs and told English he was free to leave. English initially was reluctant to move away from the patrol car. When he finally stepped away, Nicolino and one of the backup officers immediately saw a bag of crack cocaine on the ground where

English had been standing. English was handcuffed and placed in the patrol car. English said the cocaine was not his and claimed the officers were trying to frame him by planting the drugs. When the police wagon arrived to take English to jail, Nicolino searched English more thoroughly and discovered another bag of prepackaged crack cocaine concealed in English's underwear underneath his testes. The first bag contained four "rocks" of crack cocaine weighing about 0.6 grams. The second bag contained eight more rocks of crack cocaine weighing about 1.4 grams.

## II.

We review the denial of a motion to suppress based on the claimed deprivation of the defendant's constitutional right against unlawful searches de novo. *See State v. Ochoa*, 792 N.W.2d 260, 264 (Iowa 2010). We make an independent evaluation based on the totality of circumstances shown in the entire record. *See id.* Although English raises his claims under both the Federal and Iowa Constitutions, he does not argue for a different standard under the Iowa constitution. "Where a party raises issues under the Iowa Constitution and the Federal Constitution, but does not suggest a different standard be applied under the Iowa Constitution, we generally apply the federal standard." *State v. Edouard*, 854 N.W.2d 421, 452 (Iowa 2014).

Review of challenges to the sufficiency of the evidence is for the correction of legal error. *See State v. Randle*, 555 N.W.2d 666, 671 (Iowa 1996). We view the "'evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be

deduced from the record evidence.'" *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005) (quoting *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005)).

A.

English challenges the initial traffic stop. "When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle." *State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014). "'The motivation of the officer stopping the vehicle is not controlling in determining whether reasonable suspicion existed. The officer is therefore not bound by his real reasons for the stop.'" *Id.* (quoting *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002)). Officer Nicolino cited two traffic offenses as justification for the stop: English crossed the center line of the road, a violation of section 321.306; and Nicolino observed the left rear brake lamp emit white light, a violation of sections 321.387 (rear lamps) and 321.404 (signal lamps). The traffic violations here are sufficient grounds to support the traffic stop. *See State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997).

English argues the evidence does not support a finding that the brake light was defective. Specifically, English argues the brake light was repaired with red tape such that white light could not have emitted from the brake light. The district court received into evidence photographs of the rear of the vehicle at issue, and there is no white light emitting from the left rear brake lamp. However, none of the photographs were taken with the brakes activated. The photographs are thus largely immaterial to the issue. Officer Nicolino testified he observed white light emitting from the brake light. The district court credited this testimony over

English's contrary assertion. We defer to the district court's credibility determination. *See State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012) ("Because of the district court's opportunity to evaluate the credibility of witnesses, we will give deference to the factual findings of the district court.").

B.

English contends Officer Nicolino unlawfully expanded the scope and duration of the traffic stop when Officer Nicolino instructed English to exit the vehicle and when Officer Nicolino conducted a pat-down. "A seizure for a traffic violation justifies a police investigation of that violation. A relatively brief encounter, a routine traffic stop is more analogous to a so-called 'Terry stop' . . . than to a formal arrest." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* Thus, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). "[T]he government's legitimate and weighty interest in officer safety outweigh[s] the de minimis additional intrusion of requiring a driver, already lawfully stopped, to exit a vehicle." *Rodriguez*, 135 S. Ct. at 1615. In addition to officer safety, if "the detainees' responses or actions raise suspicions unrelated to the traffic offense,

the officer's inquiry may be broadened to satisfy those suspicions." *State v. Bergmann*, 633 N.W.2d 328, 335 (Iowa 2001).

Officer Nicolino had legitimate grounds to expand the scope of the traffic stop. Nicolino observed English leaving a suspected drug activity house in the middle of the night. English failed to pull over and stop in a reasonable amount of time after Officer Nicolino activated his lights and siren. Officer Nicolino was sufficiently concerned that he called for backup. English displayed nervous and odd behaviors as Officer Nicolino approached the vehicle. For example, English stuck his license or identification on the outside of the window and rolled the window up. English provided false information to Nicolino when Nicolino asked English where he had come from. The officers observed a large knife in the open glove box. We conclude the expansion of the traffic stop was justified by concerns for the officers' safety and by reasonable suspicion of other criminal activity. *See State v. Merrill*, 538 N.W.2d 300, 302 (Iowa 1995) (holding furtive movements coupled with other suspicious circumstances can be sufficient to establish probable cause); *State v. Scott*, 405 N.W.2d 829, 832 (Iowa 1987) (holding frisk was lawful where the officer has reasonable cause to believe the detainee may be armed with a weapon such as a knife).

## C.

English also challenges the search following the initial frisk. As discussed above, the initial frisk was done to protect the officers' safety and to investigate criminal activity. During the course of the lawful frisk, Officer Nicolino felt a bulge in the front of the defendant's pants and observed the defendant taking evasive,

crouching action to avoid the frisk. Officer Nicolino concluded that further investigation was warranted. We conclude the limited secondary search did not violate the defendant's right to be free from unreasonable searches and seizures.

First, English consented to the search. When Nicolino felt the bulge in English's pants and told English he suspected English was hiding something in his pants and wanted to search further, English replied, "That's fine. Go ahead." Even before Nicolino requested consent, English voluntarily gave it. *See State v. Garcia*, 461 N.W.2d 460, 462 (Iowa 1990) ("It is well established that a warrantless search, with voluntary consent, is valid under the fFourth Amendment.").

Second, under the facts and circumstances of this case, the secondary search was justified. Officer Nicolino observed the defendant leaving a drug activity house, knew the defendant had provided false information in response to questioning, and observed a dangerous weapon in the defendant's vehicle. Officer Nicolino felt a bulge that, based on his training and experience, he believed to be contraband in the front of the defendant's pants. The officer's suspicion was heightened by the defendant's attempts to evade the frisk. The district court thus did not err in denying the motion to suppress. *See, e.g., State v. Heitzmann,* 632 N.W.2d 1, 10 (N.D. 2001) ("Heitzmann's demeanor and actions justified a pat-down search, and when Heitzmann became uncooperative and began exhibiting evasive behavior, a more intrusive pocket search was justified."); *State v. Willis*, 481 S.E.2d 407, 412 (N.C. Ct. App. 1997) (holding officer search of interior pocket was justified where the defendant exited a

suspected drug house and the defendant exhibited nervous and evasive behavior).

Finally, it should also be noted there was no evidence seized as a result of the frisk and expanded search. After Officer Nicolino completed the search of English's person, the officer informed English the encounter was terminated and English was free to leave. After English walked back toward his vehicle, the officers observed contraband on the ground where English had been standing. The officers' subsequent arrest and seizure of the contraband was thus independently supported by probable cause. *See, e.g.*, *United States v. Binion*, 570 F.3d 1034, 1040 (8th Cir. 2009) (affirming denial of motion to suppress where drugs were seized after falling out of the defendant's pants leg); *U.S. v. Cochran*, 309 Fed. Appx. 2, 6 (7th Cir. 2009) ("After Cochran got out of his car, a baggie containing what the officers thought to be (and what was later confirmed to be) crack cocaine fell out of his pants leg. That entitled the officers to seize the baggie . . . and gave them reason to place him under arrest for drug possession."); *People v. Simpson*, No. 3139/00, 2002 WL 523089, at *6 (N.Y. Sup. Ct. Feb. 8, 2002) ("As the defendant approached the vehicle, a package containing small packets of crack-cocaine fell out of his pants leg. This was clearly visible to the detectives, who seized the package and placed the defendant under arrest.").

## D.

English contends his conviction of possession with intent to deliver is against the weight of the evidence. Although he states his issue as a weight-of-

the-evidence claim, his argument and the authority he cites all relate to the sufficiency of the evidence. The district court found English possessed twelve, individually-packaged rocks of crack cocaine weighing a total of 2.32 grams. The quantity of drugs and the manner in which they were packaged for resale support an inference of intent to deliver. *See State v. See*, 532 N.W.2d 166, 169 (Iowa Ct. App. 1995) ("The quantity and packaging of a controlled substance may be indicative of an intent to deliver.").

III.

For the foregoing reasons, we affirm the district court's denial of English's motion to suppress. We also affirm his conviction of possession with intent to deliver.

**AFFIRMED.**