**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2351
_____

UNITED STATES OF AMERICA

v.

ESTEBAN LATORRE-CACHO,
Appellant
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(District Court No. 1-21-cr-00160-001)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on May 2, 2024
_____

Before:  KRAUSE, CHUNG, and AMBRO, <u>Circuit Judges</u>

(Filed:  May 6, 2024)
_____

OPINION[*]
_____

**CHUNG**, <u>Circuit Judge</u>.

Esteban Latorre-Cacho challenges the District Court's denial of his suppression

---

[*]    This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

motion, arguing that his traffic stop was extended without reasonable suspicion and that his consent to search his vehicle was involuntary. Since both arguments fail, we will affirm.

I.    BACKGROUND[1]

In 2021, Trooper Brian Konopka, positioned in an unmarked police vehicle, observed Latorre-Cacho violate two Pennsylvania traffic laws.[2] Konopka conducted a traffic stop of Latorre-Cacho's minivan, which was recorded by the police vehicle's dashboard camera. Approximately four minutes into the stop, Konopka ran Latorre-Cacho's driver's license as well as checks of two additional police systems and a criminal history check (the "criminal database checks").[3] Contemporaneously with these checks, the two also engaged in conversation about Latorre-Cacho's travel and other general topics. Around seven minutes into the stop, Konopka began asking Latorre-Cacho about boxes Konopka observed in Latorre-Cacho's vehicle. Approximately nine minutes into the stop, Konopka asked for Latorre-Cacho's consent to search the vehicle, and Latorre-Cacho gave both oral and signed written consent.

Upon searching the car, Konopka discovered large amounts of cocaine and

---

[1]    Because we write for the parties, we recite only facts pertinent to our decision.
[2]    Latorre-Cacho does not contest that Konopka had probable cause to believe that the violations occurred.
[3]    As noted by the District Court, the record is insufficient to determine when each of the criminal database checks began or to determine the duration of each check. Although Latorre-Cacho's argument on appeal addresses each individual check, we will treat them as one cumulative criminal history check as Latorre-Cacho essentially did before the District Court.

arrested Latorre-Cacho. Latorre-Cacho moved to suppress the evidence, alleging that Konopka extended the traffic stop without reasonable suspicion and that he did not obtain valid consent to a search of the vehicle. After a suppression hearing, the District Court denied the motion. Latorre-Cacho ultimately pleaded guilty but preserved his right to appeal the denial of his suppression motion.

II.      DISCUSSION[4]

A.      Extension of the Traffic Stop

A lawful traffic stop must be conducted reasonably. Whren v. United States, 517 U.S. 806, 810 (1996). That means, among other things, that it lasts "no longer than is necessary to effectuate" the mission of the stop and ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed." Rodriguez v. United States, 575 U.S. 348, 354 (2015) (citation and quotation omitted). When a traffic stop extends beyond this point, it is unlawful if unsupported by reasonable suspicion. Id. at 355; see also United States v. Stewart, 92 F.4th 461, 467 (3d Cir. 2024).

In determining whether a traffic stop was unlawfully extended, our analysis is two-fold. First, we must identify the "Rodriguez moment" — the point in time "when the stop was measurably extended" beyond its mission. Stewart, 92 F.4th at 467. Even "a *de minimis* extension" from the "basic mission of investigating a traffic violation" is unlawful

---

[4]      The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).
      We review legal arguments challenging a suppression ruling de novo and factual findings for clear error. United States v. Clark, 902 F.3d 404, 409 (3d Cir. 2018). "Mixed questions of law and fact are subject to independent appellate review." Id.

if unsupported by reasonable suspicion. United States v. Hurtt, 31 F.4th 152, 160 (3d Cir. 2022). In determining whether an action was within mission, we review whether it was "objectively reasonable and proper under Rodriguez." United States v. Hunter, 88 F.4th 221, 224 (3d Cir. 2023), cert. denied, No. 23-6404, 2024 WL 675161 (U.S. Feb. 20, 2024). Second, we determine "whether the facts available to the officer up to that moment established reasonable suspicion of criminal activity." Stewart, 92 F.4th at 467. In evaluating whether reasonable suspicion exists, "we consider 'the totality of the circumstances—the whole picture.'" Id. (quoting United States v. Garner, 961 F.3d 264, 271 (3d Cir. 2020)). Reasonable suspicion requires more than a "hunch," id. (citation omitted), but considerably less than a showing of criminality by a preponderance of the evidence, United States v. Green, 897 F.3d 173, 183 (3d Cir. 2018) (citation omitted). The standard is objective and we consider "'whether a reasonable, trained officer standing in the officer's shoes could articulate specific reasons justifying' the extension of the stop." Stewart, 92 F.4th at 468 (quoting United States v. McCants, 952 F.3d 416, 422 (3d Cir. 2020)).

The District Court determined that the Rodriguez moment occurred when Konopka questioned Latorre-Cacho about the boxes in his vehicle. Latorre-Cacho argues that the Rodriguez moment occurred earlier, approximately four minutes into the traffic stop when Konopka ran the criminal database checks.[5] We recently held that a criminal record check

---

[5] Latorre-Cacho also argues that the Rodriguez moment occurred at the onset of the stop when Konopka asked Latorre-Cacho about his travels. It was Latorre-Cacho who initiated the topic of travel, however, and it was reasonable for Konopka to respond in

4

that "was supported by objectively reasonable safety concerns … [fell] squarely within the confines of the stop's mission." Hunter, 88 F.4th at 226. Though not every criminal record check "improves officer safety," id. at 231 (McKee, J., concurring), "[v]iewing the circumstances as they existed at the scene of the stop," id. at 255, particularly the indictors that drugs were being transported, see infra (discussion of reasonable suspicion and supporting facts), we conclude that the criminal database checks were supported by objectively reasonable safety concerns. Id. at 225.[6] Accordingly, we see no error in the District Court's decision that the Rodriguez moment occurred later in time.

Nonetheless, even assuming that the Rodriguez moment occurred at this point,

---

kind. Rodriguez does not require that officers abstain from questions that naturally follow in the course of a stop; rather, it prohibits officers from extending traffic stops with off-mission conduct. These questions were limited in scope and duration, providing no basis to conclude that they exceeded the run-of-the-mill travel questions that we have repeatedly held fall within the scope of a traffic stop. Garner, 961 F.3d at 271; United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003).

[6]      Konopka testified that he did not frisk Latorre-Cacho because he had subjectively concluded that Latorre-Cacho was not armed and dangerous. That subjective assessment does not control our analysis here. We evaluate the reasonableness of an officer's actions based upon an *objective* standard. Hunter, 88 F.4th at 224. Moreover, while a reasonable belief that an individual may be armed is the principal factor in evaluating the reasonableness of a frisk for weapons, see Arizona v. Johnson, 555 U.S. 323, 330 (2009), a criminal history check addresses a safety concern that may encompass, and be broader than, that addressed by a frisk. See, e.g., Maryland v. Wilson, 519 U.S. 408, 413 (1997) (dangers posed by traffic stop include assaults); see also Jordan Blair Woods, Policing, Danger Narratives, and Routine Traffic Stops, 117 Mich. L. Rev. 635, 640–41 (2019) (in study of Florida traffic stops from 2005 to 2014, the "most common weapons used to assault officers" during routine traffic stops were "hands, fists, or feet" and "the motor vehicle itself."). Similarly, the information obtained from a criminal history check (e.g., whether an individual's history includes assault, fleeing the scene, or other conduct that may implicate physical safety) is different than that obtained by a frisk (i.e., whether the individual has weapons).

giving due weight to the "totality of the circumstances" known to and observed by Konopka, a reasonable, trained officer in his shoes could articulate specific reasons justifying the extension of the traffic stop. Stewart, 92 F.4th at 468. These factors in particular support such a determination:

- Latorre-Cacho was driving a rental vehicle, which in his training and experience was "a common method for transporting drugs." Appendix ("Appx") 240; see, e.g., Stewart, 92 F.4th at 470 ("[W]e have counted the use of a third-party vehicle as a factor contributing to reasonable suspicion"); Givan, 320 F.3d at 458.
- Latorre-Cacho's travel plans appeared to be a "rehearsed story." Appx 240, 293.
- Latorre-Cacho was taking a "highly unusual route of travel between Buffalo and New York City, particularly his overnight stay at a hotel in Lebanon, Pennsylvania, where he claimed he was visiting a 'friend.'" Appx 240; see, e.g., Stewart, 92 F.4th at 468–69 (defendant's "evasive, inconsistent, and downright puzzling answers to [officer's] questions about his travel" supports reasonable suspicion); Givan, 320 F.3d at 458–59.
- Latorre-Cacho was traveling on a known "drug corridor." Appx 240; see, e.g., Stewart, 92 F.4th at 468, 470–71 (traveling along "a well-known drug smuggling corridor" supports reasonable suspicion); Garner, 961 F.3d at 272.
- There were multiple large boxes of electronic equipment in the car that appeared to have been "opened and re-taped." Appx 240.
- Sunshades were used to partially obscure the backseat where the boxes were located. Id.; see, e.g., Stewart, 92 F.4th at 468, 469 (vehicle's "dark tint" and use of "sun-screening shades" supports reasonable suspicion).
- Three cell phones were in the car. Appx 240; see, e.g., United States v. Frierson, 611 F. App'x 82, 85 (3d Cir. 2015) (not precedential) (presence of "three cell phones in the console" supports reasonable suspicion).[7]

Thus, even if the Rodriguez moment occurred at the earlier time asserted by Latorre-Cacho, the extension was lawful and supported by reasonable suspicion.[8]

---

[7] We give less weight to the other "commonplace, otherwise innocuous factors" that the District Court considered, and that the trooper noted, Stewart, 92 F.4th at 473 (Freeman, J. concurring), though they also lend some support to a reasonable suspicion determination.

[8] Since we determine there was reasonable suspicion justifying the stop even at this earlier moment, we also conclude that it existed at the later Rodriguez moment that the District Court identified.

6

We will affirm the District Court's denial of Latorre-Cacho's motion on this ground.

B.     Validity of the Consent[9]

Latorre-Cacho also argues that he did not validly consent to the search of his vehicle because there was a "clear language barrier inhibiting [his] understanding" of the consent form.  Opening Br. at 58.  He argues that although the form was in Spanish, "no one explained the substance of the form" to him, and "he held the form far too briefly to actually read it."  Id. at 62.

We see no clear error in the District Court's determination that Latorre-Cacho gave consent "freely and voluntarily."  United States v. Price, 558 F.3d 270, 277 (3d Cir. 2009) (citation omitted).  The District Court correctly noted that Konopka "obtained Latorre-Cacho's consent to search three times," and there was no evidence of "duress or coercion." Appx 242–43.  The video recording of the stop also confirms that "Latorre-Cacho's words and actions … demonstrate that he understood what he was doing when he consented to the searches" even though there was a "slight language barrier."  Appx 243.  Finally, as the District Court noted, this "slight language barrier … [was] outweighed by numerous other indicia of voluntariness" such as Latorre-Cacho's age, education, and intelligence, the lack of any use or threat of force or physical punishment by Konopka, and Latorre-Cacho's consenting to the search several times.  Appx 243; see also Price, 558 F.3d at 278.

Further, Latorre-Cacho's decision to briefly review the consent form does not render

---

[9]     Whether consent was voluntary is a factual finding subject to clear error review. United States v. Murray, 821 F.3d 386, 391 (3d Cir. 2016).

his consent invalid, particularly in the absence of any interference by Konopka. See, e.g., United States v. Roberson, 573 F. Supp. 3d 209, 233 (D.D.C. 2021) ("A defendant's mere failure to read a consent form when he had ample opportunity to do so does not invalidate the resulting consent."). Konopka informed Latorre-Cacho that he could ask any questions before signing the Spanish-language consent form and allowed him unconstrained time to review it. Thus, the District Court did not clearly err in concluding that consent was freely and voluntarily given, and we will also affirm on this ground.

III.    CONCLUSION

For these reasons, we will affirm the District Court's denial of Latorre-Cacho's suppression motion.